**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch**

Civil Action No. 12-cv-2128-RPM

HACKSTAFF LAW GROUP, LLC;
JAMES C. HACKSTAFF; and
JOHN T. SNOW,

    Plaintiffs,

v.

HARTFORD CASUALTY INSURANCE COMPANY,

    Defendant.

_____

**MEMORANDUM OPINION AND ORDER**
_____

Plaintiffs, the Hackstaff Law Group, LLC, James C. Hackstaff, and John T. Snow ("the Hackstaff Parties"), were named as third-party defendants in Civil Action No. 10CV5280 in Denver District Court ("the Underlying Action"). The core factual allegations asserted in the Third Party Complaint filed by Lowell17, LLC in the Underlying Action are as follows:

Lowell17, LLC was formed in December 2006, in connection with its purchase of real property located at 1601 Lowell Boulevard in Denver, Colorado ("the Subject Property"). Under the terms of the original LLC agreement, Donald Hackstaff ("Donald") and his company, R2JD#1 ("R2"), owned a 20 percent membership interest in Lowell17, and DRMS, LLC owned the rest. Donald and R2 were required to develop and execute a construction project at the Subject Property and ensure that the project complied with applicable laws and regulations.

Donald and R2 did not have an ownership interest in the Subject Property, and were not authorized to sell or negotiate any share of Lowell17's ownership interest in the Property.

In late 2006 or early 2007, Donald and R2 began running low on cash, and sought financing from Gross Family, Ltd. to help them satisfy their obligations to Lowell17. The Hackstaff Parties represented Donald and R2 in those negotiations. Originally, the parties agreed that Gross Family would provide Donald and R2 a $1.5 million loan in return for a 75 percent share of any economic benefit R2 derived from its membership interest in Lowell17.

In October 2007, James Simon, an attorney for Gross Family, submitted a revised draft of the proposed agreement to the Hackstaff Parties. The revised agreement modified the interest that R2 was conveying to Gross Family from the beneficial economic interest to a direct ownership interest in the Subject Property itself by way of a warranty deed. The Hackstaff Parties responded that Donald and R2 could not provide a warranty deed because R2 did not have a direct ownership interest in the Subject Property, but Gross Family insisted that the transaction be structured as a direct interest conveyance so it could qualify as a like-kind exchange under Internal Revenue Code § 1031. E-mail communications establish that the Hackstaff Parties, Donald and R2, Gross Family, Ltd. and its attorneys were all aware that R2 did not have a direct ownership interest in the Subject Property to convey.

Nonetheless, R2 executed a statutory quitclaim deed (which makes no representations or warranties as to validity of title) to convey a direct ownership interest in the Subject Property in exchange for a $1.5 million loan. The Hackstaff Parties conspired to execute the transaction, even though they knew it was fraudulent, because their clients, Donald and R2, badly needed the money.

Thereafter, Gross Family and its owner brought suit against Lowell17, alleging that Lowell17 negligently represented to them that Donald and R2 owned a direct interest in the Subject Property or were authorized to convey a portion of Lowell17's interest in the Subject Property. On May 10, 2011, Lowell17 added the Hackstaff Parties, Donald and R2, Scott Gross (the principal of Gross Family, Ltd.), and Gross' attorneys as third-party defendants. Lowell17 asserted three claims for relief:

<u>FIRST CLAIM FOR RELIEF – CIVIL CONSPIRACY</u>

67.    R2, [Donald], Gross Family Ltd., Gross, Snow, J. Hackstaff, the Hackstaff Law Group . . . conspired to design, enter into and/or facilitate a fraudulent transaction . . . Snow, J. Hackstaff, the Hackstaff Law Group . . . engaged in this conspiracy and sham transaction for the fraudulent, unlawful and tortuous [sic] purpose of enabling Gross Family, Ltd. (and its principal, Gross) to perpetrate fraud on the United States Government . . . .

68.    In furtherance of this unlawful and fraudulent purpose, R2, [Donald], Gross, Gross Family Ltd., J. Hackstaff, the Hackstaff Law Group, the Buckingham Law Firm, Simon and Dimengo intentionally sent false statements regarding the ownership of the Subject Property by wire to facilitate Gross' and Gross Family Ltd.'s improper tax scheme.

* * * * *

<u>SECOND CLAIM FOR RELIEF – SOLICITING, AIDING, AND ABETTING BREACH OF FIDUCIARY DUTIES</u>

78.    Despite knowing that R2 and [Donald] did not own and lacked authority to convey a direct interest in the Subject Property, and despite knowing that R2 and [Donald] owed fiduciary duties to Lowell17 as Member and Manager, respectively, Snow, J. Hackstaff, the Hackstaff Law Group . . . solicited R2 and [Donald] to breach their fiduciary duties to Lowell 17, and conspired with and aided and abetted them in doing so.

* * * * *

<u>THIRD CLAIM FOR RELIEF – LEGAL MALPRACTICE</u>

81. The Hackstaff Law Group, Snow and J. Hackstaff acted fraudulently and maliciously when they assisted their clients, R2 and [Donald], in executing the sham transaction . . . . In perpetrating this fraudulent scheme, the Hackstaff Law Group, Snow and J. Hackstaff made statements they knew were false when made concerning the ownership of the Subject Property and the authority of R2 and [Donald] to convey a direct interest in such property. In perpetrating this fraudulent scheme, furthermore, those Third-Party Defendants knew the entire purpose of the scheme was to perpetrate a fraud on the United States Government . . . .

\* \* \* \* \*

83. The fraudulent actions of the Hackstaff Law Group, Snow and J. Hackstaff . . . constitute legal malpractice.

The case currently before the Court arises out of the foregoing allegations made by Lowell17. When Lowell17 served the Hackstaff Parties with its Third Party Complaint, the Hackstaff Parties immediately notified their professional liability insurer, Hartford Casualty Insurance Company ("Hartford"). In a June 21, 2011 letter, Hartford informed the Hackstaff Parties of its determination that it had no duty to defend them in the Underlying Action, given the fraud or dishonest acts exclusion ("the Exclusion") in their insurance policy ("the Policy"). The Exclusion provides that there is no coverage for: "'Claim(s)' arising out of an act, error, omission, or 'personal injury' committed by the 'insured' or at the 'insured's' direction with dishonest, fraudulent, criminal, or malicious purpose or intent . . . ."

The Hackstaff Parties then initiated this action against Hartford, seeking a declaratory judgment that Hartford breached its insurance policy (a contract) and its duty of good faith by disclaiming coverage in the Underlying Action. Hartford moved for summary judgment, and the Hackstaff Parties have cross-moved for summary judgment on the duty to defend.

Under Colorado law, the duty to defend is a question of law to be determined by comparing the underlying complaint with the coverage language of the policy to find whether

the factual allegations made against the insured, if sustained, state a claim which is potentially or arguably within the policy coverage. *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083 (Colo.1991).

The state-of-mind terms in the Exclusion are not defined in the Policy, and as such, must be given their plain meaning. *See Navigators Specialty Ins. Co. v. Beltman*, No. 11-cv-00715-RPM, 2012 WL 53787, at *5-*6 (D. Colo. Nov. 1, 2012). In *Beltman*, the Court construed the terms "dishonest," "fraudulent," and "malicious" in a policy exclusion as follows:

> The Colorado Supreme Court has held that "'dishonest' is a synonym for 'untruthful'," *In Re: Plaintiff: The People of the State of Colorado v. Segovia,* 196 P.3d 1126, 1132 (Colo. 2008), and has construed the phrase "fraudulent or dishonest" in an insurance context to mean an act "for a wrongful purpose and moral obliquity. Such an act must be one done in bad faith involving a breach of honesty to such an extent as to amount to official dishonesty and lack of moral character." *Western Surety Co. v. May Mercantile Assoc.,* 283 P.2d 959, 961 (Colo. 1955). *See also The People of the State of Colorado v. Katz,* 58 P.3d 1176, 1189 (Colo. O.P.D.J. 2002) ( " 'dishonesty'... encompasses fraudulent, deceitful, or misrepresentative behavior. In addition to these, however, it encompasses conduct evincing 'a lack of honesty, probity or integrity in principle; a lack of fairness and straightforwardness ...' Thus, what may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty.")
> . . .
> The term "malicious" includes "acts done intentionally or with willful disregard of likelihood of damage...." *United States of America v. Wiktor,* 146 F.3d 815, 818 (10th Cir. 1998) (defining term "maliciously"). *See also Richards v. Sanderson,* 89 P. 769, 772 (Colo. 1907) ("Maliciously ... means a wrongful act done intentionally, without just cause or excuse ..."); *Bonidy v. Vail Valley Center for Aesthetic Dentistry, P.C.,* 232 P.3d 277, 286 (Colo. App. 2010) *(Webster's Dictionary* defines 'malice' as 'an intention or desire to harm another [usually] seriously through doing something unlawful or otherwise unjustified' or 'revengeful or unfriendly feelings' ").

*Id.*

The allegations from Lowell17's Third Party Complaint, described above, form the sole basis for determining whether the Exclusion applies. *See Hecla Mining Co.,* 811 P.2d at 1089. It is clearly alleged that the Hackstaff Parties knew that Donald and R2 did not have an

ownership interest in the Subject Property; that Gross Family, Ltd., for tax reasons, would not loan Donald and R2 money unless an ownership interest was conveyed; and that, ultimately, even though they knew Donald and R2 had no right to convey an ownership interest, the Hackstaff Parties "conspired . . . to design [a] sham transaction" conveying an interest in the Subject Property, and did so "with full knowledge of its fraudulent purpose and intended fraudulent effect." Such allegations are sufficient to show that Lowell17's "'[c]laim(s)' [arise] out of . . . act[s] . . . committed by [the Hackstaff Parties] . . . with dishonest, fraudulent, . . . or malicious purpose or intent . . . ."

The Hackstaff Parties argue that, because legal malpractice and aiding and abetting a breach of fiduciary duty claims may be satisfied by a showing of mere negligence, the Exclusion should not apply. By its terms, the Exclusion is not limited to claims that require proof of unlawful purpose or intent; rather, it is broader, applying to claims *arising out of* acts committed with such purpose or intent. Therefore, the focus is, first, whether the allegations show that the insured acted with dishonest, fraudulent, or malicious purpose or intent, and second, whether the claims against the insured flow from that conduct. *See Zurich Am. Ins. Co. v. O'Hare Reg. Ctr. For Rehab.*, 529 F.3d 916, 921 (10th Cir. 2008) ("The facts alleged in the underlying complaint, not the legal claims asserted by the plaintiff, determine the insurer's duty to defend.") Here, Lowell17's Third Party Complaint alleges facts supporting a finding that the Hackstaff Parties acted with dishonest, fraudulent or malicious purpose or intent, and that Lowell17's three claims for relief arise out of the Hackstaff Parties' conduct. Regardless of how Lowell17's claims are styled, the Exclusion applies.

Because Hartford's Exclusion applies, Hartford had no duty to defend the Hackstaff

Parties in the Underlying Action. It follows that Hartford's decision to deny the Hackstaff Parties coverage does not constitute a breach of the Policy or bad faith under the common law or C.R.S. §§ 10-3-1115, 1116.

Accordingly, it is,

ORDERED that Defendant's Motion for Summary Judgment is granted, and it is,

ORDERED that Plaintiffs' Cross-Motion for Summary Judgment is denied.

Dated: June 11, 2013.

BY THE COURT:

**s/Richard P. Matsch**
_____
Richard P. Matsch
Senior District Judge